# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FOSTER LEE TARVER,** | : | CIVIL NO. 1:20-CV-199 |
| Petitioner, | : | |
| v. | : | |
| | : | **(Magistrate Judge Carlson)** |
| **PENNSYLVANIA ATTORNEY GENERAL OFFICE, et al.,** | : | |
| Respondents. | : | |

## MEMORANDUM OPINION

I.  **Statement of Facts and of the Case**

In this case we are asked, once again, to consider a legal saga which has spanned nearly five decades. The petitioner, Foster Lee Tarver, was charged by state authorities for his participation in a December 1968 homicidal crime spree, and in June of 1969, Tarver, who was then a minor, was convicted of murder, robbery, and other offenses. Tarver was initially sentenced to death, but later was resentenced to life imprisonment without parole. The factual background of these offenses was summarized by the Pennsylvania Supreme Court in its 1971 decision affirming Tarver's conviction and sentence in the following terms:

> On the morning of December 2, 1968, Tarver, acting in concert with Samuel Barlow, Jr., and Sharon Margarett Wiggins, executed an armed robbery of the Market Street Branch of the Dauphin Deposit Trust Company in Harrisburg. During the robbery, a customer in the bank was shot both by Tarver and Wiggins. Six bullets entered his body

causing instant death. Following the robbery, the felons fled from the scene in a Chevrolet Sedan which they stole on the same morning from a parking lot in Harrisburg. About two blocks from the bank, the three abandoned the Chevrolet Sedan and entered a Buick Sedan which they had previously stolen in Pittsburgh and parked in this pre-arranged location in Harrisburg to aid in their flight from arrest. While fleeing in the Buick, the felons were apprehended by the police and the money stolen from the bank totaling Seventy Thousand ($70,000) Dollars was recovered. The major portion of the money was found in the Buick Sedan and about Forty-Five Hundred ($4500) Dollars was found in and around the abandoned Chevrolet Sedan.

During the hearing to determine the degree of guilt, Tarver testified and did not deny his participation in the commission of the robbery. Neither did he deny shooting the victim of the homicide. However, he stated that for some time before the day involved he became accustomed to consuming quantities of cough syrups, known as Robitussin and Romilar, sniffing glue and smoking marijuana, and that he had done this a short time before the bank robbery, here involved; that as a result he was 'high' when he entered the bank and his head was 'spinning'; that he had no intention of robbing the bank, and could not remember committing the robbery or shooting anyone during its occurrence. However, questioning elicited that he remembered stealing the Buick in Pittsburgh; stealing the Chevrolet a short time before the robbery in Harrisburg; parking the Buick under a bridge a short distance from the bank; 'thinking' about robbing the bank; driving to the bank in the Chevrolet and having three guns, two .32 Calibre revolvers and one .22 Calibre revolver in his coat pocket at the time; and, standing on a counter while in the bank.

Commonwealth v. Tarver, 284 A.2d 759, 760-61 (1971).

Following this conviction, Tarver pursued multiple unsuccessful post-conviction challenges and appeals. Thus, "[b]etween 1978 and 2010, [Tarver] filed seven PCRA petitions, all of which were denied or dismissed." Commonwealth v. Tarver, No. 875 MDA 2018, 2019 WL 441006, at *1 (Pa. Super. Feb. 5, 2019).

Finally, after more than four decades of fruitless post-conviction litigation, a change in the law relating to juveniles convicted of murder afforded Tarver some relief from this mandatory life sentence. Specifically, the United States Supreme Court's decision in Miller v. Alabama, 567 U.S. 460 (2012), held that life sentences without the possibility of parole for juvenile offenders like Tarver violated the Eighth Amendment to the United States Constitution.

The Supreme Court's decision in Miller, which was later made retroactive by the Court in Montgomery v. Louisiana, 136 S. Ct. 718, 193 L. Ed. 2d 599 (2016), inspired Tarver's eighth post-conviction relief petition which sought re-sentencing in light of the Eighth Amendment principles announced in Miller. This relief was granted in state court. Specifically, on October 30, 2017 and again on May 3, 2018, Tarver was re-sentenced in the Court of Common Pleas of Dauphin County to 40 years-to-life imprisonment on this murder conviction. (Doc. 1). Given the fact that Tarver had served some 48 years in prison at the time of this re-sentencing, this newly imposed sentence was tantamount to a time-served sentence and Tarver has been released from custody. However, because Tarver was sentenced under Pennsylvania's indeterminate sentencing system to 40 years-to-life imprisonment, he remained subject to a lifetime term of parole supervision. Thus, Tarver remains under a state criminal justice sentence, albeit a sentence of parole supervision, as a result of this re-sentencing for his role in this slaying.

Dissatisfied with this sentencing outcome, Traver appealed his sentence to the Pennsylvania Superior Court arguing that this 40 years-to-life sentence which provided for his immediate parole was somehow unlawful. At the same time, while this state court appeal was pending, Tarver filed a federal habeas corpus petition which we dismissed without prejudice as premature and unexhausted while his appeal was pending in state court. Tarver v. Pennsylvania Bd. of Prob. & Parole, No. 3:18-CV-2071, 2018 WL 6933390, at *1 (M.D. Pa. Nov. 28, 2018), report and recommendation adopted sub nom. Tarver v. PA Attorney Gen., No. CV 18-2071, 2019 WL 108852 (M.D. Pa. Jan. 4, 2019).

On February 5, 2019, the Pennsylvania Superior Court denied Tarver's appeal of his 40 years-to-life sentence and affirmed the sentence imposed upon the petitioner. In doing so, the Superior Court found that: "the Pennsylvania Supreme Court held in Commonwealth v. Batts, 640 Pa. 401, 163 A.3d 410 (2017) ('Batts II'), that juvenile offenders for whom the sentencing court deems life without parole sentences inappropriate, 'are subject to a mandatory maximum sentence of life imprisonment as required by section 1102(a), accompanied by a minimum sentence determined by the common pleas court upon resentencing[.]' Id., at 421." Commonwealth v. Tarver, No. 875 MDA 2018, 2019 WL 441006, at *4 (Pa. Super. Feb. 5, 2019). The Superior Court then went on to observe that:

4

> [Tarver] suggests a *maximum* term of life imprisonment is unconstitutional and affords him no meaningful opportunity for release. [Tarver]'s argument misapprehends Pennsylvania's sentencing scheme.
>
> Pennsylvania utilizes an indeterminate sentencing scheme with a minimum period of confinement and a maximum period of confinement. "In imposing a sentence of total confinement the court shall at the time of sentencing specify any maximum period up to the limit authorized by law . . . ." 42 Pa.C.S.A. § 9756(a). See also Commonwealth v. Saranchak, 544 Pa. 158, 675 A.2d 268, 277 n.17 (1996). Here, that maximum period is life imprisonment. Therefore, the sentence imposed, with a maximum period of life, is lawful.
>
> To the extent [Tarver] meant his *minimum* term is unconstitutional and affords him no meaningful opportunity for release, we note "[t]he maximum term represents the sentence imposed for a criminal offense, with the minimum term merely setting the date after which a prisoner may be paroled." Martin v. Pennsylvania Bd. of Prob. and Parole, 576 Pa. 588, 840 A.2d 299, 302 (2003). Here, the trial court noted that, upon resentencing on May 3, 2018, [Tarver] was given "time credit from December 2, 1968, to October 30, 2017, minus roughly five months[,]" and thus, at the time of resentencing, he was eligible for parole. Trial Court Opinion, filed 8/22/18. In fact, the trial court noted the "the Pennsylvania Board of Probation and Parole [subsequently] sent a letter [to the trial court] indicating that [ ] [Tarver] was released on parole" after the credit for time served was awarded to [him]. Id., at 2 n.2.

Commonwealth v. Tarver, No. 875 MDA 2018, 2019 WL 441006, at *4 (Pa. Super. Feb. 5, 2019). Concluding therefore that Tarver's arguments on appeal were "wholly frivolous", id., the Superior Court denied this petition for further post-conviction relief.

Tarver did not further appeal this decision in the Pennsylvania courts, but instead filed this timely petition seeking federal habeas corpus relief. Tarver's

5

current petition, while timely, seems unexhausted since it raises a single issue, a claim based upon the Supreme Court's decision in Bouie v. City of Columbia, 378 U.S. 347 (1964), that imposition of the maximum sentence of life imprisonment in conjunction with a 40-year minimum sentence which afforded the petitioner immediate release on parole somehow denied Tarver due process. This claim never appears to have been raised by Tarver in state court following his re-sentencing. Moreover, Bouie, which addressed a due process vagueness challenge to a criminal statute when that state statute was re-interpreted by the state courts after the defendant's conduct in order to encompass and criminalize the defendant's conduct, has no application to the instant case since Tarver cannot realistically claim that he was not on notice for the past five decades that murder was a crime which exposed him to penalties including a maximum sentence of up to life imprisonment.

This petition is now ripe for resolution. For the reasons set forth below, we recommend that this petition be denied.

## II. Discussion

### A. State Prisoner Habeas Relief--The Legal Standard.

A state prisoner seeking to invoke the power of this Court to issue a writ of habeas corpus must satisfy the standards prescribed by 28 U.S.C. § 2254, which provides in part as follows:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf

of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

**(b)(1)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

**(A)** the applicant has exhausted the remedies available in the courts of the State;

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**(2)** An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254 (a) and (b).

### 1. <u>Substantive Standards For Habeas Petitions</u>

As this statutory text implies, state prisoners must meet exacting substantive and procedural benchmarks in order to obtain habeas corpus relief. Federal courts may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States," section 2254 places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings led to a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure. See, e.g., <u>Reed v. Farley</u>,

7

512 U.S. 339, 354 (1994). Thus, claimed violations of state law, standing alone, will not entitle a petitioner to section 2254 relief, absent a showing that those violations are so great as to be of a constitutional dimension. See Priester v. Vaughan, 382 F.3d 394, 401-02 (3d Cir. 2004).

### 2. **Deference Owed to State Court Rulings**

These same principles which inform the standard of review in habeas petitions and limit habeas relief to errors of a constitutional dimension also call upon federal courts to give an appropriate degree of deference to the factual findings and legal rulings made by the state courts in the course of state criminal proceedings. There are two critical components to this deference mandated by 28 U.S.C. § 2254.

First, with respect to legal rulings by state courts, under section 2254(d), habeas relief is not available to a petitioner for any claim that has been adjudicated on its merits in the state courts unless it can be shown that the decision was either: (1) "contrary to" or involved an unreasonable application of clearly established case law; see 28 U.S.C. § 2254(d)(1); or (2) was "based upon an unreasonable determination of the facts," see 28 U.S.C. § 2254(d)(2). Applying this deferential standard of review, federal courts frequently decline invitations by habeas petitioners to substitute their legal judgments for the considered views of the state trial and appellate courts. See Rice v. Collins, 546 U.S. 333, 338-39 (2006); see also Warren v. Kyler, 422 F.3d 132, 139-40 (3d Cir. 2006); Gattis v. Snyder, 278 F.3d 222, 228

(3d Cir. 2002).

In addition, section 2254(e) provides that the determination of a factual issue by a state court is presumed to be correct unless the petitioner can show by clear and convincing evidence that this factual finding was erroneous. See 28 U.S.C. § 2254(e)(1). This presumption in favor of the correctness of state court factual findings has been extended to a host of factual findings made in the course of criminal proceedings. See, e.g., Maggio v. Fulford, 462 U.S. 111, 117 (1983) (per curiam); Demosthenes v. Baal, 495 U.S. 731, 734-35 (1990).

### 3. Procedural Thresholds for Section 2254 Petitions.

#### a. Exhaustion of State Remedies.

Furthermore, state prisoners seeking relief under section 2254 must also satisfy specific, and precise, procedural standards. Among these procedural prerequisites is a requirement that the petitioner "has exhausted the remedies available in the courts of the State" before seeking relief in federal court. 28 U.S.C. § 2254(b). In instances where a state prisoner has failed to exhaust the legal remedies available to him in the state courts, federal courts typically will refuse to entertain a petition for habeas corpus. See Whitney v. Horn, 280 F.3d. 240, 250 (3d Cir. 2002).

This statutory exhaustion requirement is rooted in principles of comity and reflects the fundamental idea that the state should be given the initial opportunity to pass upon and correct alleged violations of the petitioner's constitutional rights.

O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999). As the Supreme Court has aptly observed, "a rigorously enforced total exhaustion rule" is necessary in our dual system of government to prevent a federal district court from upsetting a state court decision without first providing the state courts the opportunity to correct a constitutional violation. Rose v. Lundy, 455 U.S. 509, 518 (1982). Requiring exhaustion of claims in state court also promotes the important goal of ensuring that a complete factual record is created to aid the federal courts in their review of a section 2254 petition. Walker v. Vaughn, 53 F.3d 609, 614 (3d Cir. 1995). A petitioner seeking to invoke the writ of habeas corpus, therefore, bears the burden of showing that all of the claims alleged have been "fairly presented" to the state courts, and the claims brought in federal court must be the "substantial equivalent" of those presented to the state courts. Evans v. Court of Common Pleas, 959 F.2d 1227, 1231 (3d Cir. 1992); Santana v. Fenton, 685 F.2d 71, 73-74 (3d Cir. 1982). A petitioner cannot avoid this responsibility merely by suggesting that he is unlikely to succeed in seeking state relief, since it is well-settled that a claim of "likely futility on the merits does not excuse failure to exhaust a claim in state court." Parker v. Kelchner, 429 F.3d 58, 63 (3d Cir. 2005).

  **B. This Petition Should be Denied**

  These settled legal tenets dictate the outcome in this case. At the outset, with respect to the claims now raised by the petitioner in federal court, it is evident that

the petitioner has not met section 2254's exhaustion requirement.

The sole federal constitutional issue presented by Tarver in this federal habeas corpus petition is his claim based upon the Supreme Court's decision in <u>Bouie v. City of Columbia</u>, 378 U.S. 347 (1964), that imposition of the maximum sentence of life imprisonment in conjunction with a 40-year minimum sentence which afforded the petitioner immediate release on parole somehow denied Tarver due process on vagueness grounds because he was denied adequate notice that his conduct violated the law and could expose him to the potential of life imprisonment. To the extent that this is Tarver's claim, this claim was never presented to the state courts. <u>See</u> <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 844-45 (1999) (finding that a petitioner properly exhausts claims in state court "by invoking one complete round of the State's established appellate review process"); <u>Lines v. Larkin</u>, 208 F.3d 153, 160 (3d Cir. 2000) ("Petitioners who have not fairly presented their claims to the highest state court have failed to exhaust those claims."); <u>Evans v. Court of Common Pleas, Delaware County, Pa.</u>, 959 F.2d 1227, 1230 (3d Cir. 1992) ("A claim must be presented not only to the trial court but also the state's intermediate court as well as to its supreme court."); <u>Blasi v. Atty. Gen. of Pa.</u>, 30 F. Supp. 2d 481, 486 (M.D. Pa. 1998) ("The exhaustion doctrine requires the defendant to present the issue to any intermediate state appellate court, if applicable, and to the state's supreme court."). Thus, this claim is unexhausted and cannot afford federal habeas corpus relief to

Tarver.

In any event, Tarver's claim fails on its merits. The sole case that Tarver relies upon to support this due process vagueness claim, Bouie v. City of Columbia, 378 U.S. 347 (1964), was a function of a particular place and time in our nation's history when civil rights activists who were participating in a peaceful sit-in at a restaurant in South Carolina were convicted of trespass based upon a state court re-interpretation of this trespass statute which was adopted after-the-fact, extended the state statute to their conduct, and criminalized the defendant's conduct after the sit-in had occurred. The Supreme Court held that this *post hoc* state court extension of a state criminal statute to embrace behavior that was previously not encompassed by the law violated due process stating that:

> There can be no doubt that a deprivation of the right of fair warning can result not only from vague statutory language but also from an unforeseeable and retroactive judicial expansion of narrow and precise statutory language. As the Court recognized in Pierce v. United States, 314 U.S. 306, 311, 62 S.Ct. 237, 239, "judicial enlargement of a criminal act by interpretation is at war with a fundamental concept of the common law that crimes must be defined with appropriate definiteness."

Bouie v. City of Columbia, 378 U.S. 347, 352, 84 S. Ct. 1697, 1702, 12 L. Ed. 2d 894 (1964).

Understood in this fashion, the Supreme Court's decision in Bouie simply does not afford Tarver any right to relief. Indeed, Tarver's case stands in stark contrast to the situation that confronted the Court in Bouie. Unlike the defendants in Bouie,

Tarver cannot claim that he had no notice in 1968 when he participated in the execution of an innocent bank customer that murder was illegal and could result in a life sentence. The criminal nature of murder, and the severe penalties for that crime, were fixed and immutable elements of the law when Tarver killed his victim. Further, Bouie has no application here where the sentence recently imposed upon Tarver of 40 years-to-life imprisonment was authorized under state law and was highly favorable to Tarver since it resulted in his immediate release on parole.

Yet, while the Supreme Court's decision in Bouie affords Tarver no relief, cases construing the Court's decision in Miller v. Alabama, confirm that that the 40 years-to-life sentence actually imposed upon Tarver is lawful and proper. Following the seminal decision in Miller, numerous courts have had occasion to examine whether the re-sentencing of juvenile offenders to serve a minimum sentence of a term of years under an indeterminate sentencing system violates the Constitution. Those courts have consistently held that such sentences are consistent with Miller and do not violate the defendant's constitutional rights, provided that the length of these sentences are not tantamount to life in prison without the possibility of parole. See e.g., McCain v. Frakes, No. 8:18-CV-190, 2019 WL 2086001, at *3 (D. Neb. May 13, 2019); Jensen v. Young, No. 4:18-CV-04041-RAL, 2019 WL 653062, at *8 (D.S.D. Feb. 15, 2019); Garza v. Frakes, No. 8:17-CV-474, 2018 WL 1710183, at *4 (D. Neb. Apr. 9, 2018).

Given this rising tide of case law, Tarver's <u>Miller</u> claims fail for a single, simple reason: He was re-sentenced to a minimum term of years and was in fact promptly paroled by state authorities following his re-sentencing. Thus, Tarver has received precisely the relief contemplated by <u>Miller</u> and its progeny, the opportunity for favorable parole consideration following his juvenile murder conviction.

### III.     Conclusion

Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus, the petition will be DENIED, and a certificate of appealability will not issue as Tarver has not demonstrated "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); <u>see also</u> <u>Buck v. Davis</u>, 137 S.Ct. 773-75 (2017); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).

An appropriate order follows.

Submitted this 31st day of March 2020.

<i>S/Martin C. Carlson</i><br>
Martin C. Carlson<br>
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FOSTER LEE TARVER,** | : | **CIVIL NO. 1:20-CV-199** |
| **Petitioner,** | : | |
| v. | : | |
| | : | **(Magistrate Judge Carlson)** |
| **PENNSYLVANIA ATTORNEY GENERAL OFFICE, et al.,** | : | |
| **Respondents.** | : | |

## ORDER

AND NOW, this 31st day of March 2020, in accordance with the accompanying Memorandum Opinion, IT IS ORDERED that this Petition for Writ of Habeas Corpus, the petition is DENIED, and a certificate of appealability will not issue as Tarver has not demonstrated "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see also Buck v. Davis, 137 S.Ct. 773-75 (2017); Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

                                             *S/Martin C. Carlson*
                                             Martin C. Carlson
                                             United States Magistrate Judge